IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*, STOP ILLINOIS MARKETING FRAUD, LLC,<br><br>       Plaintiffs,<br><br>   v.<br><br>ADDUS HOMECARE CORPORATION,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)   Case No. 13-cv-9059<br>)<br>)<br>)<br>)   Hon. Rebecca R. Pallmeyer<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF ADDUS HOMECARE CORPORATION'S
PARTIAL MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

**I.    Introduction and Overview**

Relator's Second Amended Complaint demonstrates that this asserted false claims action against Defendant Addus Homecare Corporation ("Addus") should be confined to Relator's two federal claims concerning Addus's alleged referral arrangement with senior living facility Essington Place. The Second Amended Complaint does not cure Relator's inability to allege particularized facts as to any other alleged false claims theory (such as alleged illegal referral arrangements with other facilities) and also improperly asserts for the first time an Illinois False Claims Act ("IFCA") claim without complying with the statutory filing under seal requirement (among other defects), and so Addus respectfully moves the Court to dismiss those claims with prejudice and permit the case to proceed according to its proper scope.

As the Court is aware from briefing on Addus's motion to dismiss Relator's First Amended Complaint, *see* Dkt. Nos. 37, 39-42 (briefing), and No. 44 (memorandum opinion and order), this action is predicated on the allegations of a former Addus account representative, identified in the pleadings as "CW1," 2AC ¶ 3, who was assigned to work with Essington, *id*.

¶ 112, and claims she participated in conversations, meetings, and correspondence that supposedly evidenced that Addus and Essington formed an illicit patient referral arrangement in violation of the Anti-Kickback Statute. *Id.* ¶¶ 111-216.[1] Relator's First Amended Complaint sought to expand Addus's potential liability beyond the alleged arrangement with Essington—and well beyond any alleged events personally involving CW1—through broad-based assertions that Addus (i) had unlawful referral arrangements with myriad other facilities to which CW1 *was not* assigned; (ii) had an unlawful referral arrangement with "Dr. Dick"; (iii) falsely certified patients as eligible for Medicare-reimbursable services; and (iv) conspired with Defendant Cigna Corporation (f.k.a. HPG) to falsely certify patients as eligible for Medicare-reimbursable services. The Court dismissed these four additional theories without prejudice (and dismissed Cigna from the case), finding that the First Amended Complaint failed to plead them with particularity. Dkt. No. 44 at 26-29.

The Second Amended Complaint reasserts each of these deficient theories, 2AC ¶¶ 217-50 (alleged referral arrangements with other facilities); *id.* ¶¶ 251-58 (alleged referral arrangement with Dr. Dick); *id.* ¶¶ 259-321 (alleged false Medicare certifications); *id.* ¶¶ 322-54 (alleged conspiracy with HPG), while additionally asserting for the first time an alleged violation of the IFCA based on those allegations. *Id.* ¶¶ 383-90. However, as shown in the mark-up comparison of the Second Amended Complaint against the First Amended Complaint, attached hereto as Exhibit A, the Second Amended Complaint does not add any additional allegations concerning the alleged referral arrangement with Dr. Dick, the alleged false Medicare certifications, or the alleged conspiracy with HPG, which the Court has already determined were insufficiently pled, and so those claims should be dismissed again, this time with prejudice.

---

[1] Relator's "Second Amended Complaint for False Claims Action Violations Under 31 U.S.C. § 3729 *Et Seq.*," Dkt. No. 49 (Mar. 10, 2017), is referenced herein as "Second Amended Complaint" or "Complaint," and cited as "2AC."

Rather, the additions Relator has made to the Second Amended Complaint primarily relate to Essington, *see id*. ¶¶ 197-216, with some additional allegations concerning the alleged referral schemes with other facilities. *Id*. ¶¶ 218, 222-48. Thus, at issue in this motion is primarily Relator's allegations concerning supposed illicit referral arrangements with facilities other than Essington.

As to those other facilities, the Second Amended Complaint does not make any particularized allegations of fact describing that Addus remunerated each of those facilities in exchange for patient referrals, serviced patients who were referred by each of those facilities, and then submitted claims to Medicare or Medicaid in relation to those particular patients—though nothing less is required to state a valid claim. *See, e.g.*, *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc*., 772 F.3d 1102, 1107 (7th Cir. 2014). Rather, only as to two facilities (Tamarack and Autumn Green), the Second Amended Complaint purports to identify patients Addus serviced from those facilities, 2AC ¶¶ 225, 235, but makes no particularized allegations describing that Addus improperly remunerated those facilities and did so in exchange for obtaining referrals for the specified patients. Relator's allegations concerning all other facilities fare even worse, resting on allusion to marketing services proposals that Relator cannot link to any of the facilities in question nor connect to any illegal exchange for referrals, and vague allegations that CW1 participated in conversations about supposed "unlawful *quid pro quo* schemes" that are conspicuously unaccompanied by any elaborative detail whatsoever. *Id*. ¶¶ 220-21. These claims do not satisfy Rule 9(b) and must be dismissed.

For those and the other reasons described in greater detail below, Addus respectfully moves the Court to dismiss with prejudice Relator's two claims for alleged violation of the federal False Claims Act ("FCA") to the extent they concern alleged theories other than the

alleged referral arrangement with Essington, and to dismiss Relator's claim for violation of the Illinois False Claims Act.

**II.     Argument**

The Second Amended Complaint reasserts claims for (Count I) alleged presentation of false claims for payment to the government, in violation of 31 U.S.C. § 3729(a)(1)(A); and (Count II) alleged submission of false records to the government, in violation of 31 U.S.C. § 3729(a)(1)(B); and additionally asserts for the first time (Count III) alleged presentation of false claims for payment to the State of Illinois, in violation of the Illinois False Claims Act, 740 ILCS 175/3(a)(1)(A) and (B).

As the Court summarized in its ruling on Addus's motion to dismiss Relator's First Amended Complaint, Dkt. No. 44 at 19-20, because Relator's claims sound in fraud, the circumstances of that alleged fraud must be stated "with particularity," Fed. R. Civ. P. 9(b), which ordinarily entails a description of the "who, what, when, where, and how" of the fraud— "the first paragraph of any newspaper story." *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009) (internal quotation marks omitted).[2]  Specifically within the context of this case, where the Government has declined to intervene, and Relator is simply a "bounty hunter," *Grenadyor*, 772 F.3d at 1104, attempting to stretch the bounds of Addus's potential liability beyond anything witnessed by CW1 at Essington, "[t]he heightened possibility of mistake or bias supports the need for a higher standard of specificity for fraud compared to other civil litigation." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 780 (7th Cir. 2016) (citation omitted).

---

[2] Federal pleading standards, including Rule 9(b), apply to Relator's IFCA claim because that claim has been brought in federal court.  *See Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 782 n.5 (7th Cir. 2015); *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 470 (7th Cir. 1999).

As described below, Relator has failed "to show, in detail, the nature of the charge[s]" made against Addus beyond the alleged referral scheme with Essington, instead relying predominately on "vague and unsubstantiated accusations of fraud" quite deliberately for the purpose of "lead[ing] to costly discovery and public obloquy," *Lusby*, 570 F.3d at 854-55, in contravention of Rule 9(b).

### A. Relator Has Not Sufficiently Alleged Any Illegal Referral Schemes With Facilities Other Than Essington

Relator claims that Addus entered into illegal referral arrangements with "Church Creek, Tamarack, a Holiday Retirement Community in Palatine, Illinois, and fifteen (15) facilities within the Chicago area owned by Senior Lifestyle Corporation ('SLC'), and facilities owned by Sunrise Senior Living." 2AC ¶ 218. Relator's claims as to these facilities are not pled with particularity, but rather are distinctly "speculative" and should be dismissed. *See Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (to survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level'") (citation omitted).

#### 1. Church Creek

Relator identifies Church Creek as one of the facilities at which Addus supposedly "implemented" a "*quid pro quo* scheme" identical to that at Essington, 2AC ¶¶ 217-18, but does not make even a single factual allegation as to Church Creek, let alone describe with particularity an illegal referral arrangement and associated false claims submitted by Addus for patients referred by Church Creek, thus surely failing to satisfy Rule 9(b).

**2. Tamarack**

According to the Complaint, Tamarack is a senior living facility in Palatine that is owned by the same owners of Essington. 2AC ¶ 225. Relator alleges that "[a]s CW1 worked very closely with Essington staff, she would regularly be involved in discussions about Addus's arrangement with Tamarack." *Id.* ¶ 226. The Complaint includes no factual elaboration as to the time, place, manner, participants, or content of those "discussions" or what is meant by the term "arrangement"—all information readily available to Relator if CW1 was "regularly involved" in those discussions. *United States ex rel. Schramm v. Fox Valley Physical Servs., S.C.*, No. 12 C 8262, 2015 WL 3862954, at *4 (N.D. Ill. June 22, 2015) (dismissing a claim due in part to "the lack of detail regarding matters that [the relator] would know from first-hand observation"). Relator then asserts in conclusory fashion, "Tamarack had the exact same *quid pro quo* arrangement with Addus as Addus had with Essington." 2AC ¶ 226. That conclusory allegation is not entitled to consideration at this stage and is properly disregarded for purposes of evaluating whether Relator has satisfied its pleading burden. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

Relator purports to identify patients "referred" to Addus by Tamarack. 2AC ¶ 227. But the Complaint does not make any factual allegations describing that those patients were referred in exchange for Addus paying remuneration in violation of the Anti-Kickback Statute. *See United States ex rel. Kalec v. Nuwave Monitoring, LLC*, No. 12 C 69, 2016 WL 750155, at *5 (N.D. Ill. Jan. 26, 2016) (granting dismissal due to lack of factual allegations linking supposed examples of claims to alleged fraudulent practices). Consequently, Relator has not stated a claim for False Claims Act violations as to Tamarack.

### 3. Autumn Green and the Senior Lifestyle Corporation Facilities

Relator identifies Autumn Green as an independent and assisted living facility in Chicago owned by SLC. 2AC ¶ 231. Relator claims that Addus had an illegal referral arrangement with Autumn Green and 14 other SLC facilities based almost exclusively on the allegation that "[i]n mid-to-late 2010, Erich Connor [who allegedly 'managed' the "SLC accounts,' *see* 2AC ¶ 231] presented SLC with a proposal . . . for Addus to provide SLC's Autumn Green patients with skilled and unskilled services." *Id.* ¶ 233. The Autumn Green proposal, as quoted in the Complaint, mentioned "[c]o-marketing/outreach efforts," and a desire "to help Autumn Green retain existing residents and grow their business by providing a menu option [sic] services that are flexible, creative, diverse and customized to meet the needs of each senior requiring and/or requesting additional care." *Id.*

As Relator concedes, the proposal, even as presented by Relator in the Second Amended Complaint, said nothing about exchanging anything for patient referrals, *id.* ¶ 234, let alone, even more importantly, that Addus and Autumn Green actually agreed to an exchange of services for referrals. Rather, the proposal, on its face, simply suggests that Addus would provide services to Autumn Green in exchange for gaining access to the facility and making contact with prospective patients. Certainly, the Complaint does not allege with particularity that Addus actually violated the Anti-Kickback Statute by providing remuneration in the form of marketing services in exchange for receiving patient referrals from Autumn Green.

Relator claims that Addus, through Connor, "entered into the exact same agreement with SLC for fourteen of its other facilities," 2AC ¶ 239, but the quoted proposal applied only to Autumn Green, and Relator makes no factual allegations concerning any proposals or arrangements with any of those other facilities, in obvious contravention of Rule 9(b)'s policy against permitting "fishing expeditions." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d

771, 777 (7th Cir. 1994). Relator then goes even further, claiming that the same written proposal used with Autumn Green "[was] used at every facility Addus wanted to access, not just Essington Place," 2AC ¶ 242, though without explaining how CW1 knows that to be the case or otherwise corroborating that sweeping assertion with any factual allegations. *See United States ex rel. Graziosi v. Accretive Health, Inc.*, No. 13-CV-1194, 2017 WL 1079190, at *7 (N.D. Ill. Mar. 22, 2017) (holding that Relator failed to allege FCA claims with the particularity required by Rule 9(b) where the Second Amended Complaint did not explain how plaintiff came to have any knowledge about the operations at defendants' hospitals located in different states and in which plaintiff was never employed). Indeed, Relator alleges that CW1 "has in her possession two other proposals," which concern other facilities (Emeritus Senior Living and BMA Management), neither of which, Relator concedes, were consummated. 2AC ¶¶ 243-46. Critically, Relator expressly concedes that CW1 is unable to identify any such proposal was ever given to or accepted by SLC. *Id.* ¶ 247.

As with Tamarack, for Autumn Green (though not any other SLC facility), the Complaint lists patients allegedly referred to Addus, 2AC ¶ 237, but again makes no factual allegations describing that those patients were referred in exchange for Addus paying remuneration in violation of the Anti-Kickback Statute. *See United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 377-78 (7th Cir. 2003) (explaining it is essential to avoid dismissal that relator's allegations establish a link between alleged false claims and allegations of deceit).

Finally, Relator claims that Connor gave a "presentation for the other account executives, including CW1, regarding 'best practices,'" which "included a prepared information packet which was reviewed by Addus management prior to presenting it [to] the other account executives." 2AC ¶ 240. This is a red herring. Relator does not identify any information

contained in this packet that had anything to do with remuneration in exchange for referrals, nor describe the basis for the contention that the presentation was "reviewed by Addus management." Rather, during the presentation, Relator claims, "Connor explained that Addus was providing marketing services to fifteen of SLC's facilities, and discussed how it was a great way to gain access to the facilities and secure referrals." 2AC ¶ 241. Relator's alleged recitation of this hearsay statement given in a single, undated alleged meeting surely does not plead the "who, what, when, and where" of fraudulent kickbacks and concomitant false claims as to fifteen different senior living facilities. Certainly, the Complaint does not contain particularized factual allegations describing false claims submitted for government-reimbursable services in relation to those facilities. *Grenadyor*, 772 F.3d at 1106. As a result, Relator's claims as to Autumn Green and the other SLC facilities must be dismissed.

### 4. Facilities Owned by Sunrise Senior Living

Lastly, Relator attempts improperly to expand the scope of its allegations to unspecified facilities "owned by Sunrise Senior Living." 2AC ¶ 218. Relator alleges that "CW1 was present in numerous meetings where Sunrise Sales success was discussed," *id*. ¶ 219—though, that allegation in itself asserts no wrongdoing and says nothing about exchanging remuneration for referrals. Relator further alleges without any elaboration that CW1 was "told about the unlawful *quid pro quo* scheme by Addus employee Brian Zitko who managed the Sunrise account," *id.* ¶ 220, and also by Connor, who evidently *also* "managed the Sunrise" account, *id*. ¶ 221. Notwithstanding claiming that these supposed conversations expressly revealed an illegal referral arrangement—indeed using the legally conclusory term "unlawful *quid pro quo* scheme"—Relator includes no additional factual allegations as to the manner, timing, or content of these conversations, nor any explanation for what was actually discussed with respect to this supposed

scheme. Yet, this is information that is admittedly within CW1's knowledge. *Grenadyor*, 772 F.3d at 1108 (dismissing claim in part where Relator failed to allege facts that would have been known to him if he was not fabricating the incident).

Relator additionally alleges that "CW1 was on sales calls with Brianne Zitko (during which Ms. Zitko visited Sunrise Senior facilities)," that "Ms. Zitko was very successful in getting referrals from the Sunrise Senior organization," and that "[d]uring at least one call for which CW1 was present, Ms. Zitko brought items and gifts for the Sunrise building's Executive Director." 2AC ¶ 223. Again, the Complaint lacks any particularity as to these allegations, such as timing, location, and content. Nor does Relator specify what "items and gifts" were allegedly provided. Yet, CW1 claims to have witnessed these events firsthand. These omissions preclude Relator from satisfying Rule 9(b) and warrant dismissal of Relator's claims concerning Sunrise Senior Living facilities.

### B. Relator Has Not Sufficiently Alleged an "Unlawful Kickback Scheme" With "Dr. Dick"

This Court already held that "Relator provides no particulars about any patients referred by Dr. Dick, allegedly in exchange for Addus providing his daughter with a job." Dkt. No. 44 at 26. The Court consequently granted Addus's motion to dismiss the First Amended Complaint with respect to this claim. *Id*. at 27. The Second Amended Complaint adds no further allegations regarding this subject, *see* Ex. A, and so Addus respectfully submits that this claim should be dismissed with prejudice.

### C. Relator Has Not Sufficiently Alleged Any "Scheme" to Inaccurately Certify Patients

This Court's order on Addus's motion to dismiss the First Amended Complaint held that "Relator has not provided sufficient detail about the purported examples describing how these patients were allegedly unqualified." Dkt. No. 44 at 27. As this Court further found, Relator

alleges Addus's failure to comply with Medicare conditions for payment, namely face-to-face evaluation and certification/recertification requirement, without providing any information about whether these patients actually had face-to-face evaluations or improper certifications. *Id*. The Court consequently granted Addus's motion to dismiss with respect to this claim. *Id*. Relator adds no further allegations regarding an alleged unlawful scheme to inaccurately certify patients in the Second Amended Complaint. *See* Ex. A. Thus, the Court should again grant Addus's motion to dismiss with respect to this scheme, this time with prejudice.

### D. Relator Has Not Sufficiently Alleged a Referral/Inaccurate Certification Scheme Involving HPG

Though Cigna has been dismissed from the case, and Relator has dropped its False Claims Act conspiracy claim (previously asserted as Count III of the First Amended Complaint), the Second Amended Complaint still asserts the exact same allegations concerning Addus's alleged conspiracy with HPG, 2AC ¶¶ 322-54, which is predicated on an alleged fraud that the Court previously held was not pled with particularity. *See* Dkt. No. 44 at 28-29. Relator has not made any changes to those insufficiently pled allegations, *see* Ex. A, and so they should be dismissed with prejudice.

### E. Relator's Illinois False Claims Act Claim Should Be Dismissed

Relator asserts for the first time in the Second Amended Complaint a claim for alleged violation of the IFCA. Relator's IFCA claim should be dismissed for two reasons.

First, Relator failed to comply with the statute's filing-under-seal requirement. In order to pursue a civil *qui tam* action under the Illinois False Claims Act, "A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the State," 740 ILCS 175/4(b)(2), with the "State" referring to "the State of Illinois" and its political subdivisions. 740 ILCS 175/2(a). "The complaint shall be filed in

camera," and thereafter, "shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders." 740 ILCS 175/4(b)(2). Only "[i]f the State elects not to proceed with the action," then a relator "shall have the right to conduct the action." 740 ILCS 175/4(b)(3). Relator has no right to proceed with a claim under the Illinois False Claims Act, because it has not satisfied those requirements.

The Second Amended Complaint alleges only that Relator satisfied the filing-under-seal requirements of the federal False Claims Act by serving the Complaint on the federal government. 2AC ¶ 11. Relator makes no allegation that it has satisfied the requirements of the IFCA, 740 ILCS 175/4(b)(2), and clearly Relator has not satisfied those requirements, given that the Second Amended Complaint—asserting for the first time an IFCA violation—was served on March 10, 2017, less than 60 days after the Court ruled on Addus's motion to dismiss Relator's First Amended Complaint on February 3, 2017. Case law construing the filing-under-seal requirement is clear that failure to satisfy that requirement mandates dismissal. *Carter v. Hamilton*, No. 4-10-0256, 2011 WL 10481828, at *2 (Ill. App. Ct. 2011) (dismissing IFCA claim for failure to abide filing-under-seal requirement); *Khan v. Chicago Hous. Auth.*, No. 01 C 976, 2002 WL 849801, at *2 (N.D. Ill. May 3, 2002) (same in the case of federal False Claims Act claim).

Second, to the extent Relator's IFCA claim is predicated on alleged illegal kickbacks in the form of referrals—and as described herein, Relator's only conceivably valid claim is based on the alleged referral arrangement with Essington—Relator has not alleged that certifying compliance with anti-kickback laws is a prerequisite to State government payment to Addus, or that Addus ever represented to the State that it had complied with anti-kickback laws. The Second Amended Complaint notes that the federal Anti-Kickback Statute was amended in March

2010, such that claims resulting from a violation of the Anti-Kickback Statute would automatically violate the FCA. 42 U.S.C. § 1320a-7b(g); 2AC ¶ 20. That is not, however, the case with respect to the IFCA. The Anti-Kickback Statute does not (and of course would not, given that it is a federal statute) provide that claims resulting from a violation of that statute are violations of the IFCA. Relator instead refers to the Illinois state Vendor Fraud and Kickback Statute ("IVFKS"), 305 ILCS 5/8A-3, and asserts in conclusory fashion that "Compliance with the IVFKS is a condition of payment under the Illinois Medicaid program, as well as other state and county funded programs. Defendant violated the IVFKS, and therefore the Illinois FCA, as a result of submitting claims to Illinois Medicaid program tainted by a violation of the IVFKS." 2AC ¶ 29. Yet, in contrast to the federal Anti-Kickback Statute and the federal False Claims Act, the Illinois Vendor Fraud and Kickback statute does not provide that claims resulting from a violation of that statute automatically constitute violations of the IFCA. And Relator makes no allegation that when submitting claims to the State, Addus certified compliance with the Anti-Kickback statute or the Illinois Vendor Fraud and Kickback Statute. Consequently, Relator has not adequately pled that Addus violated the IFCA. *See, e.g.*, *United States ex rel. Kennedy v. Aventis Pharm., Inc.*, 610 F. Supp. 2d 938, 946 (N.D. Ill. 2009) (in case concerning conduct prior to 2010 amendment of Anti-Kickback Statute, holding that relator failed to sufficiently allege defendant certified compliance with statute as condition of payment for claims).

Finally, even if Relator is for some reason permitted to pursue an IFCA claim notwithstanding the failure to satisfy the filing-under-seal requirement, and failure to plead that Addus falsely certified compliance with the Anti-Kickback statute or the Illinois Vendor Fraud and Kickback Statute when submitting claims to the State, because the IFCA is modeled after the federal False Claims Act and subject to the same pleading requirements, *Ackerman*, 172 F.3d at

470; *United States ex rel. Blaum v. Triad Isotopes, Inc.*, 104 F. Supp. 3d 901, 912-13 (N.D. Ill. 2015), Relator's IFCA claim should at least be dismissed to the extent it concerns any alleged conduct other than the alleged referral arrangement with Essington. *See Mason v. Medline Indus., Inc.*, No. Civ. A. 07 C 5615, 2009 WL 1438096, at *8 (N.D. Ill. May 22, 2009).

### III. Conclusion

For the foregoing reasons, Addus respectfully moves the Court to dismiss all of Relator's claims against it other than the alleged violations of the federal False Claims Act claims concerning the alleged Essington referral arrangement. In addition, because Relator has amended its complaint twice before, Addus respectfully requests that dismissal as to all other claims be made with prejudice. *See Pugh v. Tribune Co.*, 521 F.3d 686, 698 (7th Cir. 2008).

Dated: April 7, 2017                                                                                 Respectfully submitted,

By: */s/ Joseph L. Motto*_____

Thomas L. Kirsch, II
Joseph L. Motto
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL  60601
Tel: (312) 558-5600
Fax: (312) 558-5700
tkirsch@winston.com
jmotto@winston.com

Luke A. Connelly
*(pro hac vice forthcoming)*
Winston & Strawn LLP
200 Park Ave.
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
lconnell@winston.com

*Attorneys for Addus Homecare Corp.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 7, 2017, the foregoing document was served on all counsel of record via the CM/ECF system.

/s/ Joseph L. Motto